IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JERMAINE BLAKE (B-57642), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 CV 1196 |
| | ) | |
| DR. JEFFERY SAFFOLD, | ) | Judge John J. Tharp, Jr. |
| LATANYA WILLIAMS, | ) | |
| DR. HECTOR GARCIA, and | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The motions to dismiss of defendants Garcia [62] and Williams [79] are denied. See Statement for details. A status hearing will be held on September 11, 2025, at 9:30 a.m. in Courtroom 2303.

**STATEMENT**

**I.  Background[1]**

Plaintiff Jermaine Blake alleges that on April 20, 2017, Defendant Dr. Jeffery Saffold botched a procedure to insert a filling into a tooth on the right side of Blake's mouth. After the procedure, Blake began to lose all sensation on the right side of his tongue, and he started to feel a burning and stinging sensation in his mouth. Because his tongue was numb, he would frequently bite down on it, causing bleeding and more pain in addition to the burning and stinging. As a result of the pain in his mouth, Blake would wake up in the middle of the night, could not focus or read, and had difficulty eating, drinking, and exercising.

Blake repeatedly sought medical care and medication for his pain, to no avail. First, he spoke with a nurse, who denied him pain medication but scheduled an appointment for Blake to see Dr. Saffold. Dr. Saffold saw Blake on April 25, 2017, May 5, 2017, and May 11, 2017. Each time, Saffold refused to prescribe pain medication. Saffold informed Blake that there was nothing he could do except request that Blake be seen by a specialist or an oral surgeon, but advised him that it was likely the request would be denied. After his first follow-up appointment with Dr. Saffold, on April 25, 2017, Blake submitted a grievance seeking an appointment with an oral surgeon. As Saffold predicted, Blake's request was denied, on June 2, 2017.

---

[1] The Court assumes the truth of the facts alleged in evaluating a motion to dismiss for failure to state a claim. The facts set forth are drawn from the amended complaint filed on July 24, 2020. ECF No. 13.

On May 17, 2017, Dr. Saffold also submitted a request to Defendant Dr. Hector Garcia, a "utilization management physician" employed by Wexford, that Blake be seen by an oral surgeon. Dr. Garcia denied that request and told Blake to wait two months—without pain medication—to see if the feeling would return to his tongue. Blake then sought an appointment with a physician assistant and saw Defendant LaTanya Williams. The amended complaint does not allege the specific date on which Williams saw Blake, but alleges that Williams informed Blake that she did not "meddle in the affairs of the dental department" and he would "just have to endure the pain." According to Blake, he saw a number of medical professionals throughout the summer of 2017, on May 11, May 25, June 1, June 8, June 15, and June 22. Throughout this time, the feeling in his tongue did not return, and his pain did not subside.

At some point before the end of 2017, Blake "was finally sent to an oral surgeon consultant," but the complaint does not report the specific date or result of this consultation. It evidently did not resolve the problem, because Blake filed another grievance on December 28, 2017, which was denied as moot because he was receiving medical attention. Blake followed up with Dr. Saffold and other medical professionals throughout 2018 and 2019 about his pain. Finally, on June 14, 2019, Blake was sent out to the University of Illinois Medical Center in Chicago and saw a neurologist, Dr. Christopher Janson, who gave Blake the pain medication Neurontin. 24. Dr. Janson determined that Blake's pain and discomfort were caused by an injury to a latrogenic nerve, which was damaged during a dental procedure. The Neurontin relieved the burning and stinging, and Blake began to feel better.

Blake filed this lawsuit, *pro se*, on February 19, 2020. The case was assigned to Judge Lee, who entered an order indicating that summons would not issue and counsel would be recruited for Blake. ECF No. 6).The Court recruited counsel for Blake on March 27, 2020. Citing the onset of the COVID 19 pandemic, Blake's recruited counsel reported difficulties in contacting Blake, and the Court extended the time for Blake's counsel to file an amended complaint to July 25, 2020. ECF No. 10. The amended complaint was filed by that date, but was not served on Dr. Garcia or Williams until July 2022 and January 2023, respectively.

During the period between the filing and service of the amended complaint, Blake's counsel reported to the Court on several occasions that he had been unable to discover addresses at which to serve Garcia and Williams. *See* ECF Nos. 41 ("counsel reports that he has been unable to serve Defendants Garcia and LaTanya Williams" as of October 6, 2021); ECF No. 44 (status report advising that Garcia and Williams had not been served as of December 30, 2021); ECF No. ECF No. 53 ("Service not not [sic] effectuated as to Defendants Garcia and Williams" as of May 31, 2022). On July 19, 2022, the Court deferred a status hearing until September 7, 2022 "[t]o provide additional time for Plaintiff to effectuate service as to Defendants Garcia and Williams," ECF No. 55.

In October 2020, Wexford's counsel advised Blake's counsel that they would be appearing for Garcia and Williams once those defendants had been served. ECF No. 62-2, Ex. B at 2-3. Wexford's counsel did not, however, provide any address for Garcia or Williams, offer to accept service on their behalf, or otherwise waive service. Counsel for Blake subsequently endeavored to obtain addresses for Garcia and Williams through discovery served on Wexford. Wexford's initial disclosures pursuant to Rule 26(a)(1) listed Garcia as a person with knowledge but did not include an address, prompting the Court to direct Plaintiff's counsel to reach out to Garcia's counsel for

2

Garcia's last known address and that further Rule 26(a)(1) disclosures be made by November 5, 2021. Williams' address was listed only as the Stateville Correctional Center. Thereafter, Blake's counsel served discovery requests seeking, *inter alia*, addresses for Garcia and Williams, but received no response to the interrogatories served or to informal email requests. On June 14, 2022, the Court directed Wexford's counsel to provide Plaintiff with the last known addresses for Garcia and Williams within a week. ECF No. 54.

Dr. Garcia was served on July 19, 2022 (Def's Mem. in Support of Motion to Dismiss, ECF No. 62-3 at 2). This case was reassigned to this Court's docket on September 8, 2022, and on December 8, 2022, the Court gave the plaintiff "until 1/13/23 to serve or dismiss Ms. LaTanya Williams." ECF No. 73. Williams was served on January 5, 2023. ECF No. 81, Ex. F.

## II.     Analysis

Defendants Garcia and Williams each move to dismiss the complaint on two grounds. Pursuant to Federal Rule of Civil Procedure 12(b)(5), they allege that the plaintiff failed to timely serve them. Second, they maintain that the amended complaint fails to state a plausible claim for intentional infliction of emotional distress. In addition, Garcia, but not Williams, moves to dismiss the amended complaint as untimely and barred by the statute of limitations.

### A.     Rule 12(b)(5): Failure to Timely Serve the Complaint

Invoking Federal Rule of Civil Procedure 12(b)(5), the defendants move to dismiss the complaint for insufficient service of process. Federal Rule of Civil Procedure 4(m) provides a period of 90 days following the filing of a complaint in which to serve the defendants. Rule 4(m) requires the district court to extend the time for service "if the plaintiff shows good cause for the failure." The rule also permits the district court to extend the time even absent good cause. *Coleman v. Milwaukee Bd. of School Directors*, 290 F.3d 932, 934 (7th Cir. 2002). *See also* Fed. R. Civ. P. 4(m) advisory committee's note to 1993 amendment (noting that rule "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown").

Blake asserts that he has good cause for the delay in serving Garcia and Williams—namely, the failure of Wexford's counsel to timely provide addresses at which Garcia and Williams could be served. While it does appear that Wexford's counsel withheld that information (its counsel surely had the information because by October 7, 2020, they had ascertained that they would be representing Garcia and Williams once they had been served), Blake does not explain what affirmative steps, if any, he took to try to locate and serve Garcia and Williams within the original 90-day service period. That Wexford's counsel did not, on its own initiative, provide address information for these defendants does not, standing alone, provide good cause for Blake's delay in effecting service.

Nevertheless, even in the absence of good cause, district courts have wide discretion in determining whether the 90-day service period should be extended. "The factors that courts typically consider when deciding whether to grant an extension of time for service of process include but are not limited to: whether the defendant's ability to defend would be harmed by an extension; whether the defendant received actual notice; whether the statute of limitations would

3

prevent refiling of the action; whether the defendant evaded service; whether the defendant admitted liability; whether dismissal will result in a windfall to a defendant; whether the plaintiff eventually effected service; whether the plaintiff ever requested an extension from the court due to difficulties in perfecting service; and whether the plaintiff diligently pursued service during the allotted period." *Jones v. Ramos*, 12 F.4th 745, 749 (7th Cir. 2021).

Here, there are factors on both sides of the scale, but the factors favoring extension outweigh those that suggest that an extension is unwarranted. To begin, there are hints of gamesmanship in the chronology described above; Garcia and Williams are represented by the same counsel representing Saffold and Wexford and, as Blake tells it, didn't respond to discovery requests for their addresses until the Court set firm deadlines requiring them to do so. On that score, it also bears noting that, although the Court said nothing explicit about extending the time in which to effect service, the Court closely monitored the status of discovery but did not (until July 2022) set a service deadline or warn Blake's counsel that dismissal was in the cards if he didn't effect service soon. Blake's counsel could reasonably have understood that in merely monitoring the status of service without setting a deadline, the Court was tacitly extending the service period. Indeed, in deferring a July 2022 status hearing until September 7, 2022, the Court expressly stated that it was doing so "[t]o provide additional time for Plaintiff to effectuate service as to Defendants Garcia and Williams." ECF No. 55. In other words, the Court effectively confirmed that it was, and had been, extending time for Blake's counsel to serve Garcia and Williams. The case was subsequently reassigned to this Court shortly thereafter and, consistent with the provision of additional time to serve Garcia, this Court followed suit by setting a deadline for service on Williams that gave her an additional month. No deadline would have been needed if service was already time-barred.

Also weighing in favor of denying the 12(b)(5) motion is the fact that the Court expressly stated that summons would not be issued as to the original pro se complaint Blake filed in February 2022, which the Court dismissed without prejudice on initial review pursuant to 28 U.S.C. § 1915A. Ordinarily, the filing of an amended complaint "does not toll the Rule 4(m) service period and thereby provide an additional 90 days for service," 4B Wright & Miller, Federal Practice and Procedure § 1137 (4th ed.), but in this case, the initial complaint was never effective and the Court expressly delayed the start of the service period until the filing of an amended complaint by recruited counsel. That ruling effectively extended the service period by more than six months. The defendants, to be clear, do not cite this delay in support of their argument that service was untimely, but that delay, sanctioned by the Court, nevertheless suggests that the Court did not believe that providing notice of Blake's claims against Garcia and Williams was urgent.

It is also clear that the defendants had actual notice of Blake's claims during the 90-day service period (as measured from the filing of the amended complaint). Wexford's counsel advised Blake's counsel in an email on October 7, 2025, that they would be representing Garcia and Williams once those defendants had been served. Counsel could not have made that representation unless he had already advised Garcia and Williams of the claim and secured their agreement that Wexford's counsel would represent them—that is particularly so given the potential conflict of interests that such joint representation could have presented. *Cf. Davenport v. Dovgin*, 545 Fed. Appx. 535, 539 (7th Cir. 2013) (observing that the "shared attorney" method of imputing notice required by Rule 15(c)(1)(C) is based on the notion that "when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have

communicated to the latter party that he may very well be joined in the action." Singletary, 266 F.3d at 196.

That Garcia and Williams had actual notice of Blake's claims also confirms that extending the service period would work no significant prejudice on the defendants. Further, discovery was open until stayed by agreement in January 2023, and discovery deadlines have been extended along the way, so there was no impediment to the defendants' ability to prepare a defense. Were the defendants concerned about adverse effects of service delays on their ability to defend against Blake's claims, moreover, it seems quite unlikely that they would have, as they did, agreed to several extensions of the discovery schedule and, ultimately, to stay discovery altogether. In any event, because the case will proceed against Dr. Saffold and Wexford whether or not the Court extends the service period, Garcia and Williams will be deposed whether they are parties to the case or not (and so they could have been deposed at any point, regardless of service). The defendants' claim that they have been prejudiced by the delay in service does not bear scrutiny.

### B. Rule 12(b)(6)

The operative amended complaint sets forth a single claim: the defendants wrongfully failed to alleviate—or at least address—the pain he experienced for some two years after he received a dental filling. The amended complaint asserts two "counts," each setting forth a distinct legal theory to support the claim for relief as to the failure to address his pain: Count I invokes 42 U.S.C. § 1983 in asserting that the defendants violated Blake's Fourteenth Amendment rights through deliberate indifference to his serious medical needs; Count II propounds a state law theory of intentional infliction of emotional distress against the defendants.

Defendants Garcia and Williams have each moved pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss the amended complaint for failure to state a claim for relief.[2] Both defendants argue that the claim fails under an intentional infliction of emotional distress theory, but neither defendant challenges the sufficiency of Blake's claim under Section 1983. Dr. Garcia, however, asserts that under either theory Blake's claim is time-barred, Defendant Williams does not challenge the timeliness of the claim against her.

#### 1. Claims versus Theories

Rule 12(b)(6) authorizes courts to dismiss claims for relief, not legal theories supporting the claim or claims asserted in a complaint. A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (quotation omitted). "Counts" are the authorized device for asserting distinct claims—that is, claims "founded on a separate transaction or occurrence," *see* Fed. R. Civ. P. 10(b)—but as here, are often employed to assert different legal theories in support of a claim.[3] A "complaint

---

[2] Defendant Safford answered the complaint (ECF No. 30) and did not file a motion to dismiss. Wexford filed a motion to dismiss, which the Court denied. ECF No. 37.

[3] Though a common practice, setting forth legal theories in separate counts is inconsistent with the federal pleading rules. As Judge Shadur explained in *Bonestroo, Rosene, Anderlik & Associates v. Devery*, "the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law 'cause of action' approach, rather than the federal concept

5

need not identify a legal theory, and specifying an incorrect theory is not fatal," *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992), but no matter how many legal theories a plaintiff may assert, they constitute a single "claim" to the extent they are premised on the same facts. "[D]ifferent legal theories . . . do not multiply the number of claims for relief." *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1992); *see also id.* ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.").

The distinction between claims and legal theories is important because Rule 12(b)(6) permits only the dismissal of claims, not legal theories. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). "[A] complaint cannot be dismissed merely because one of the theories on which it proceeds, and the facts alleged in support of that theory, do not make out a claim for relief." *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). To the extent that any viable legal theory exists to support a claim, that claim will survive a motion to dismiss. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012); *Croixland Props. Ltd. v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999) ("[I] f one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint."); *Churchwick Partners, LLC v. Seal Keystone, LLC*, No. 22-cv-02251, 2023 WL 2973801, at *2 (S.D. Ind. Apr. 17, 2023) ("A Rule 12(b)(6) motion cannot be used to dismiss individual legal theories advanced in support of a claim, so long as at least one theory, implicit or explicit, remains[.]").

The time for identifying and testing the viability of legal theories comes after pleading and responding to the complaint, during discovery and the summary judgment process. *ACF 2006 Corp. v. Mark C. Ladendorf, Att'y at L., P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) ("Making legal arguments in support of one's claim comes after the pleadings."); *BBL,* 809 F.3d at 325 ("Summary judgment is different. The Federal Rules of Civil Procedure explicitly allow for '[p]artial [s]ummary [j]udgment' and require parties to 'identif[y] each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought.'") (alterations in original) (quoting Fed. R. Civ. P. 56(a)); *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."). At this stage, it is enough to plead a plausible claim, after which "a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). "A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

"What this all means is that when two theories based on the same facts—and part of a single claim for relief—are presented in a complaint, and a defendant only challenges the sufficiency of the complaint as to one of the theories, the claim cannot be dismissed." *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016). "And the

---

of 'claim for relief.'" No. 05-cv-02184, 2006 WL 1005284, at *11 (N.D. Ill. Apr. 12, 2006) (citing *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1991)).

challenged *theory* can't be dismissed, either, because dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage." *Id.* So here, where the plaintiff has asserted multiple legal theories in support of a claim, the defendants face the challenging task of demonstrating that there is no legal theory under which Blake is entitled to relief. And, indeed, they plainly cannot do so here because they have not challenged the viability of Blake's claim under a theory that the alleged failure to alleviate Blake's pain violated the Eighth Amendment and is therefore actionable under Section 1983. Accordingly, the claim survives and the defendants' motions to dismiss the complaint for failure to state a claim for relief must be denied.

### 2. Statute of Limitations

Dr. Garcia, but not Williams, also asserts that Blake's claim is time-barred. The statute of limitations for claims based on Section 1983 is based on the limitations period applicable to personal injury claims under prevailing state law. That is two years in Illinois, prompting the defendants to concede that both theories set forth in the complaint in support of Blake's claim—Section 1983 and Intentional Infliction of Emotional Distress—have a two-year limitations period. In fact, however, the statute of limitations for a cause of action based on intentional infliction of emotional distress is one year under Illinois law. 745 ILCS 10/8-101(a) ("No civil action ... may be commenced in any court against a local entity or any of its employees for any injury unless commenced within one year from the date that the injury was received or the cause of action accrued."). *Olson v. Cross*, 714 F. Supp. 3d 1034, 1062 (N.D. Ill. 2024).

Garcia argues that the limitations period for the claim against him began to run on May 17, 2017, when he allegedly denied Blake's request to see an orthodontist. That is the only involvement by Dr. Garcia that the complaint alleges; accordingly, he argues that the two-year statute expired on May 16, 2019, some 10 months before the original complaint was filed.

Expiration of the statute of limitations is an affirmative defense, however, and the plaintiff is not required to negate it by pleading facts supporting the timeliness of his claim. As the Seventh Circuit has said, "[a] complaint states a claim on which relief may be granted whether or not some defense is potentially available." *United States v. N. Trust Co.,* 372 F.3d 886 (7th Cir.2004). "Complaints need not anticipate defenses; the resolution of the statute of limitations comes after the complaint stage." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). True, if a plaintiff pleads facts that definitively and affirmatively establish that the limitations period has run, he can plead himself out of court, but that is not the case here. That the complaint affirmatively alleges only one contact between Blake and Garcia does not establish that there were not others (and recall that discovery has not been completed). In any event, Blake maintains that the violation of his rights "continued for as long as the defendants had the power to do something about his condition" but failed to do so. *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001). That presents a fact question—what authority and responsibility to address Blake's complaints did Garcia have?—that cannot be resolved against Blake on the basis of the allegations of his complaint. Summary judgment may present a different picture.

\* \* \* \* \*

7

For the foregoing reasons, the motions to dismiss of Dr. Hector Garcia and LaTayna Williams are denied.

Dated: September 3, 2025

/s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge